Mr. Fischer? Mr. Chief Justice, and may it please the Court, in contrast to the case you just heard, the based-upon question in this case turns on how the substantial assistance provision codified at 18 U.S.C. section 3553E works. And specifically, the key is whether the government is correct when it says that a judge imposing a sentence in this situation shall disregard or entirely set aside the guideline range calculated according to the defendant's criminal history and offense level. And the answer to this question lies directly in the plain text of the statute. And that text says the opposite of what the government claims. And I'm turning now to page 3A, which is in the government's brief, the appendix. And that's where the statute appears. And I just want to read to you the operative language of section 3553E. It says, Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994. So in other words, that text directs the Court straight to the guidelines, not away from the guidelines, and it says nothing about tethering a sentence to the mandatory minimum or somehow setting the guidelines aside. And it makes perfect sense. Sotomayor, The problem really is that the guidelines are a little confusing. They talk about an initial guidelines range, and then they tell the Court the real guideline range is a statutory minimum, so that it's talking about the guidelines doesn't resolve that question, because which guideline are they talking about? But in my mind, they're told they have to start from the statutory minimum in their departure. So how do we get away from that fact? Well, Justice Sotomayor, we don't think that's actually the way the guidelines are properly read. I think you're referring to section 5G1.1. Yes. And in that section, what it says is that if there's a statutorily required minimum sentence, then the judge shall adjust the guideline range to that minimum. But remember, the whole point of a section 3553e motion is to say that the minimum does not apply. As the Court put it in Dorsey, what the Court does when it grants a substantial assistant motion is it lets the defendant escape the binding effect of the mandatory minimum. So now the judge, as I just read to you in the second sentence of section 3553e, directed right back to the guidelines and the guideline range. And it's one other thing I want to point out while I'm talking about it. Sotomayor, that means the departure is not you're suggesting the departure this is the effect of your rule. Right. The departure starts with the lower guideline range, and the only way they can go is down from that? Yes, Justice Sotomayor, but let me put this answer in context. So first of all, remember, sometimes the guideline range is going to be above the minimum, and sometimes it's going to be below, and sometimes it's going to straddle the minimum. So what section 3553e does is says when the judge grants a substantial assistance motion, the judge should then sentence that defendant like anyone else, which is go to the guideline range. Now, yes, that departure under 5k1 is going to be from the guideline range, regardless whether it's above or below the minimum. But, yes, the Court is directed to just sentence that defendant according to the guideline range, just as you would any other defendant. And that makes perfect sense, because, again, what Congress has done, remember, is set up a default regime of guided discretion under the guidelines as set by guideline ranges according to offense level and criminal history categories. And then it has stepped in and created a disruption in a limited context of mandatory minimums in particular drug cases. But then Congress says if there's substantial assistance given, those two things cancel each other out, and we just want you to go back to the default range. And if I could add one other thing to your question, Justice Sotomayor, where I think it puts this all together, it's to refer to the Court's opinion in Melendez. Remember, in Melendez, the Court talks about two different types of substantial assistance departures. One is from the guideline range under 5k. The other, if the government wants to allow it, is to allow that departure to go beneath the mandatory minimum, if the government puts that as part of the motion. So when you go to 5k in the guidelines, which is where these departures get calculated, the beginning of 5k says that a court may depart from the guideline range if the substantial assistance warrants that departure. The guideline 5k says nothing, says nothing at all about departing from the mandatory minimum. There's no such thing in the guidelines. Only departures occur from the guideline range. And I think what cements this, if I could return the Court to the text that I was referring to at page 3a of the government's brief, it's the sentence, it's the reference to section 994 as a whole. The way the government reads this sentence is that the government says, well, all that sentence does is direct the Court to the 5k guidelines, which are the ones for measuring the substantial assistance departure. But if that were so, what that text would say is section 994n, because subsection 994n is the place in the commission's authority where Congress directs it to deal with substantial assistance scenarios. But instead what Congress did in section 3553e is refer to 994 as a whole, which includes the entire guideline system. And if you compare that to the other statutory provisions on these two pages, 2a and 3a, you'll see that on page 2a, Congress refers no fewer than four times to particular subsections of 994. So when Congress wanted to limit a court's authority or to direct it to particular guidelines, provisions, or particular elements of the commission's authority, Congress did so specifically. By contrast to the other section, it's a whole. Ginsburg. Ginsburg. It's an anomaly in the position you take, and that is, if the defendants involved  get the very same sentence that they got, the sentence that they are now serving, so that seems a little odd, that people who, if they were being sentenced today, would get the exact same sentence should get the benefit of this scale down. Justice Ginsburg, we agree, if that were true, it would be odd, but I have to disagree with your premise. And I think this relates to the answer I gave to Justice Sotomayor earlier about how 5G.1.1 applies. That argument which the government makes depends on the assumption that the judge sentencing somebody in a courtroom today in this scenario needs to start with the mandatory minimum and work from there. And that's just a false premise. In Section 3553e, as I've quoted to you, the direction is quite to the contrary. It's to sentence the defendant according to the guidelines and to start with the guideline range. And 5G.1.1 doesn't require starting at the minimum today or for any future sentencing. So, in effect, we're asking for our defendants to be given sentence modifications that enable them to be given sentences just as they would be in courtroom today. And the government ---- Alito, what if the district judge specifically disavows any reliance on the guidelines? What if the district judge says, I don't care if the guidelines are subsequently lowered, this is the sentence I'm imposing? Well, two things. Justice Alito, first of all, that judge would be ---- if you're talking about a sentence in the first instance, that judge would be violating Section 3553e, which tells that judge to sentence the defendant according to the guidelines. I think the only ---- Well, they're not mandatory any longer. I think that's the only way a judge might work around that, is to say after Booker, the judge is allowed to set the guidelines on the higher-level side. Yeah. So we are after Booker. So that's what the judge says. Then what? I think if the judge set the guidelines entirely aside and said, I just flat-out disagree with anything the guidelines say, and I'm going to give you a certain sentence, maybe I'd have a difficult case on the based-upon question. But anything short of that, where the judge starts with the guideline range or refers to it or uses it as an anchor, I think you're easily within. And I think the way to solve this problem is to say ---- You'd have a difficult case if the judge says, I disagree with the guidelines on basing my sentence on the Sentencing Reform Act. It is not ---- my sentence is not in any way based on the guidelines. You'd have the ---- you would have just a difficult case in saying that that's not ---- Fair enough. That that's based on the guidelines? Fair enough. Maybe it would be even more than difficult. But I think that's a highly unusual scenario, Justice Alito. And so in all the other scenarios where the judge does what is more commonly done in a Gall-type situation or all the other situations this Court has seen, where you start with the guidelines, and as our very case illustrates, you usually land within the guidelines, or you vary from the guidelines for one reason or another. All of those satisfy based-on. And I think, Justice Alito, the other thing I would say in response to your concern is, remember, and I think this was emphasized in the first case, remember, all we're arguing here is that defendants should be eligible to go before a district judge and argue for a sentence reduction. If a district judge in that case says to himself, well, look, the guidelines really didn't have any meaningful effect the first time around, that may well be a reason to deny sentence modification in that context. All we're asking is for judges to be allowed to use their guided discretion given to them by Congress in the Sentencing Commission. Ginsburg. What is the function of the mandatory minimum? Because it seems the guidelines of the Sentencing Commission, that's fine, but mandatory minimum, like it or not, is legislation. And it seems to be vanishing in your approach. Instead of being, instead of trumping whatever would be the guidelines, it's out of the picture. Justice Ginsburg, of course a mandatory minimum in a statute trumps the guidelines in the ordinary situation. But we're in the special situation of substantial assistance motions being granted under 3553e. And that special situation, as the Court put it in Dorsey, allows the defendant to escape the minimum. Another way to think about it, Justice Ginsburg, is we're not doing any, we're not avoiding any trumping problem because we have two statutes that have to work together. One is the mandatory minimum statute, and the other is section 3553e. And what the Court said is that, and I think what the plain text directs, is that the mandatory minimum is set aside when the substantial assistance motion is granted. And if your own words in Dorsey aren't enough, you can look at any number of other places, including the legislative history, where we quote statements from Senator Hatch and from President Reagan, where they introduced this. You can look at various issuances from the Sentencing Commission that we've quoted in our brief. And again and again and again, courts, legislators, administrators all understand that in the narrow situation of a substantial assistance motion being granted, the mandatory minimum is set aside. And all that happens in that scenario, I want to stress one more time, is the defendant is sentenced just like anybody else. Sotomayor, let's start with that proposition. In my experience, district court judges use a lot of different approaches to sentencing. And I think that many of the surveys and amici brief that you have show that. There are judges who have fixed rules. Perhaps they should or shouldn't. Let's not get into that, okay? But there's a wide berth of them who simply say, my rule of thumb is you cooperate 50 percent. And some of them never deviate. Fifty percent. How can we say that for those judges, that their sentence was based on the guidelines? So that you're entitled to eligibility. They based it on the statute. They clearly tell you, I'm basing it on the statutory minimum. Fisherman, I think for two reasons, Justice Sotomayor. First is, we think the based upon question should be answered according to what the law requires, not necessarily what a judge did, perhaps mistakenly. So as a legal matter, the sentence was required to be based on the guidelines, even if the judge didn't do it. But if you're at the time. And they have discretion to say, I want to use the statutory minimum. I don't want to use the lower guideline. I'm going to ask the other side about the many judges who do use the guidelines and substantial assistance. They say it. Prosecutors, by their own admission, have gone into judges and said, base it on the guidelines. And so there are plenty of judges who do depart based on the guidelines because they believe that they're more reflective of the seriousness of the crime and give them a better sense of how much of a departure they should or should not give. So in those ways, it informs their decision. But we're not in that case. We're in the first type of case. Fisherman, let me say two very important things to that question, because I think it's probably the hardest part about this case. The first is that, for the very reason you say, Justice Sotomayor, that there's such wide variance, sometimes not just between districts, but between courtrooms in the same courthouse, it would be in contravention of the very principles of the Sentencing Reform Act, which say avoid sentencing disparities, to deny relief to some of those defendants and to give other defendants relief, just based on the happenstance of what judge that defendant happened to appear in front of. We think it's a better rule to ask what the law required the judge to do, and if the law required the judge to consult the guidelines, that should be enough to get into the eligibility of relief. But the second point I want to make, Justice Sotomayor, is even if you want to look at what the judge did on the record, warts and all, mistakes and all, we still win this case. And that's because the judge, in our case, adjusted up to the mandatory minimum because of 5G 1.1. And as I've described, we think that was incorrect. But even if you accept that as something that happened and something you need to take into account, the Sentencing Commission has addressed that exact scenario in the policy statement that accompanied Amendment 782, which brings us here today. And this is in Section 1B1.10c. The Sentencing Commission says when you calculate an amended range under the guidelines pursuant to this amendment, you should disregard 5G 1.1 and use the range itself and not adjust. So even if we were in a world where we had to argue that in our case, even if the judge made a mistake and relied on the guideline incorrectly, that has been taken care of by the Sentencing Commission amendments. And so we still have a lower guideline range after Amendment 782, which is all that's required to get relief under Section 3582. And I think that adds one other thing I want to say, and it brings me back to Justice Ginsburg's question about the concern about disparities and who gets relief and who doesn't. We think that our solution, actually, for the reasons I just described, avoids sentencing disparities and also avoids sentencing disparities because we're asking for our sentences to be adjusted just as somebody would be sentenced today. As we point out in our briefing, though, the government is the one that creates the disparity problem. Because under the government's view, people whose guideline ranges were above the minimum, and even if the judge sentenced below, those people are eligible for Section 3582 relief. And the only difference between those people and our clients in this case is that the guidelines measured their crimes as being more serious than the ones our clients committed. And we think it would be highly irregular and, in fact, perverse for a court to say, for the people who committed more serious offenses that are otherwise identically situated, we are going to grant them relief in sentences reductions, but not the people whose crimes weren't judged to be quite as serious. They're not even allowed to ask the judge to exercise discretion in their favor. So we think that would be a wild anomaly that this Court ought to construe Section 3582 to avoid. If there are no more questions, I'll reserve the rest of my time for rebuttal. Roberts. Thank you, counsel. Mr. Feigin. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. There was very little discussion in the last 20 minutes about anything that happened at these particular Petitioner's sentencing. The sentencing transcripts are entirely in the Joint Appendix, and what you will not find in the sentencing transcripts is any indication that the drug guidelines that the Sentencing Commission has amended had any effect on the sentences that these Petitioner's received. In fact, if Petitioner's were initially sentenced for the first time today, they'd be subject to the same statutory minimums, the same sentencing ranges under 3553A4, which would be the statutory minimums. He's wrong that that has changed. And they would be subject to the exact same rules for taking into account their substantial assistance to law enforcement in adjusting their sentences. The Commission hasn't purported to change any of that. What they're seeking is windfall relief, and they assert that they're entitled to that windfall relief because they claim that the district judge made an error in their cases. They're wrong the district judge made an error, and I'll get to that in one second. But even if the district judge had made an error, this Court's decision in Dillon makes quite clear that Section 3582C2 proceedings are not for error correction. They are for sentence reductions in cases in which the sentence was actually based on a sentencing range that the Commission has modified. But I agree with Petitioner's counsel, the crux of the case is that this is a sentencing range. That's the force of their argument, which is the sentencing range was raised to the statutory minimum. So the original judge felt bound by that sentencing range because of the statutory minimum, but that became the new guideline. And if they came before the Court again today for a full resentencing, even after Section 1B110C, to which opposing counsel referenced, even after Section 1B110C were enacted, Section 1G1.1 would still require that the statutory minimum be their guideline sentence for purposes of Section 3553A4. Sotomayor, it misses the next step, which the guidelines say if you substantially cooperate, the minimum is eliminated. Well, first of all, Your Honor, I don't think that's what the guidelines say, but I don't think the guidelines even could say that. First of all, the guidelines under 994B have to comply with all relevant provisions of law, which means 5G1.1, setting the guideline sentence of the statutory minimum, isn't optional. That's not a choice the Commission made. The Commission is required by statute to have a guideline like that. But I think the first place to look here before we even get to what the Commission did, and I don't think the Commission has set forth anything like the instruction he suggests, is the language of the statute. And so if we go to page 3A of the government's brief, they want to read Section 3553E as though it were written exactly like Section 3553F, which allows sentencing pursuant to the guidelines without regard to the statutory minimum. And they want to benefit even beyond that. They not only want sentencing to start at their below-minimum guideline range, they want a further reduction from that point to their substantial assistance. I can get back to the text in one second, but let's pause for a second. I think that just doesn't make any sense. There is no reason why the reward someone should get for substantial assistance is that a cooperator who has been convicted of an offense for which Congress has prescribed a specific statutory minimum should then, by default, automatically be presumptively sentenced at the level of a non-cooperator who has been convicted of a different crime that does not carry a statutory minimum, like a nonrecidivist version of the drug offense. That doesn't make any sense, and that's not the text that Congress enacted. When opposing counsel went through 3553E, he didn't mention the first sentence of 3553E, under which the Court shall have the authority to impose a sentence below what a statutory minimum requires so as to reflect a defendant's substantial assistance. The so as to reflect language modifies the sentence the Court is imposing. It does not modify the nature of the government's motion. And it's a limitation on what the Court can take into account in imposing a sentence below the minimum. The Court can only take into account substantial assistance factors. And that's exactly how the commission implemented this, as this Court recognized on pages 128 to 129. Kennedy, and then what effect does the next sentence have? So what that sentence does, Your Honor, is it notes that the guidelines are going to guide the Court's discretion, which is exactly what 5K1.1 does, and it's exactly what this Court recognized 5K1.1 does in its decision in Melendez, if you look at pages 128 to 129 and note 10. And I think that point is reinforced. Roberts, but all the guidelines, not just 5K1.1. And if you do look at it, in other places immediately surrounding this, it does say 994, and then the subsections in here, it just says 994. It suggests that all of the guidelines should be taken into account. I do think this was effectively settled in Melendez, Your Honor, but to address this as a matter of first principles, I think the reason for that is if we now look at 994N, which is on page 14A of the government's brief, 994N says, The commission shall assure that the guidelines, writ large, reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by a statute as a minimum sentence, to take into account a defendant's substantial assistance. So just to address your question, Mr. Chief Justice, first, before I get back to the rest of this, you'll note that 994N directs the commission to do something with the guidelines, writ large. When Congress enacted 3553e, that was in 1986. There were no guidelines, final guidelines that had been promulgated at that point. The commission had a great deal of discretion in how it might have decided to implement 994N, and it might have sprinkled substantial assistance reductions and ways of doing that for particular types of crimes all over the guidelines. So I don't even know that the commission had to promulgate specific guidelines to implement 994N, although that is, as this Court recognized in Melendez, what they chose to do. The other thing, and this is back to Justice Kennedy's question, when we look at 994N, is I think it recognizes that substantial assistance sentencing works exactly the way we described. It recognizes that there would be a sentence that would otherwise be imposed, and it gives us an example, the sentence that the statutory minimum would require, and then it tells the guidelines, and effectively this goes back to the reflex language that I was pointing at earlier in 3553e, it instructs the commission, the courts, that then what's going to happen is that the court will give a sentence that is lower than that, that reflects or takes into account substantial assistance. Again the point that I think Justice Sotomayor made earlier, that in fact, and in fact it's in one of the briefs, that district judges do take into account the guidelines when they grant, they determine how much time to include for substantial assistance. So, Your Honor, all 11 courts of appeals that have directly addressed this question agree with our view of how substantial assistance sentencing works. They say the D.C. Circuit has said otherwise. I don't think that's correct. But I acknowledge, as Your Honor said, and as we acknowledge in our brief, there are district courts that do this the way that Mr. Fisher just described. And I also would acknowledge that in those cases, the government often is an accomplice to that by suggesting that the court do it that way. And I can't tell you, but I think we all agree, and they acknowledge this in their reply brief, that they're doing that out of compliance with circuit law. And I can't tell you how they got out of circuit law compliance in the first place. What I can tell you is a reason why I think this persists is that it just doesn't come up on appeal that often, because when you do it the way that they think it should be done and that some of these district courts do, the defendant's not going to appeal because it's to his benefit. And from the government's perspective, we don't frequently appeal sentences. And when we do, it's not to vindicate abstract principles of law. It's if we think the sentence that was imposed is a sentence that shouldn't have been imposed and was just flatly outside the judge's discretion. And so we have essentially gotten into a place where in at least some districts, the government is attempting to just achieve the sentencing results it believes are correct by speaking to district courts. Sotomayor, you're just answering the very question, which is, you're right, there's a lot of judges. And I don't know that that's an abuse of discretion. You're already saying it's not a gross abuse of discretion or otherwise you would be appealing, so you're not doing that. It seems to me that the guidelines don't help a judge, in their words, to determine how much of a departure is just right. And judges have to figure that out by having some basis of comparison with something. What if the – because they give you five factors to consider. You've got someone who does a lot on number one, does a little on number two, does a whole lot more on number three, and then nothing on four. The judge mixes all that up and says, how much do I depart? And the next defendant will have a different mix, and the same question comes up. And what I see judges doing is saying, the severity of this crime is measured most accurately by the guidelines. It's based on a sampling across the country of how serious this crime is. Now, I'm going to take that and compare it to all of those other factors, and I'm going to decide a percentage, both based on the statutory minimum, but also on the guideline, of how much seems right to me. So it's not an abuse of discretion in my view, and if it's not, what do we do to ensure the equity that Mr. Fisher is calling for? Well, Your Honor, let me say a few things about that. The first thing I would say is when I was referring to the kinds of abuses of discretion we would appeal, there's usually a substantive component to that. We look to the actual sentence and see if it's a sentence we can live with, and if it's a sentence we can live with, we – that is what I was referencing. Now, Your Honor, I think it's – There's different ways to get to the same reduction. And I think, exactly, even if the judge got there in an impermissible way, we're not necessarily going to take an appeal just to vindicate an abstract principle of law, even though in 11 circuits, if we took that appeal, we'd win on procedural grounds because they agree with us about how these statutes should be read. Now, Your Honor, in the situation you described where a judge did perform the substantial assistance reduction in a way we think is impermissible, and in a second I'd like to get back to the reasons why we think it's impermissible, but I'd like to address your question directly. We don't think Section 3852C2 relief would be available because we don't think 3582C2 requires a court to repeat the same mistake twice. That defendant already got a substantial benefit because the court was looking to an even lower range than the court should have looked to, and they don't need to get – and shouldn't, in Congress's view, get the benefit again. There are two legal reasons why I think that is so under the statutes. The first reason is I don't think in that case their sentence can properly be said to be based on that below minimum guideline range, because the below minimum guideline range didn't have any legal force in their sentence. It shouldn't have been applied in their sentence. If you think about the function of 3582C2, it's to give defendants the benefit of a commission's change in its views about how a particular class of offenders and offenses should be punished. And although the guideline's view of how that particular class of offenders and offenses should be punished has changed, Congress's superseding view should not be changed. Again, Congress has decided that these defendants, based on their criminal histories and based on the crimes they committed, are subject to these statutory minimums. I see I have a very basic question, and I think your argument is perhaps the refutation of it, that I think the guidelines are not the tax code, despite the continuous effort necessary to number after number after number. So I'm not saying you shouldn't do it. You have to. But the fact is here, the commission made a simple decision, and so did Congress. The drug guidelines were too high. So we're going to lower them two points. And we want people to be resentenced. If it has really anything to do with that, I'm saying based upon, read it broadly. Why? Because there's only one person who knows really what that was based upon, and that's the district judge who put the sentence. And we can't psychoanalyze him, and we try to proceed case by case in three kinds of instances. One, he used the guidelines. That's easy. Two, he departed from the guidelines. Ah, was he looking at it when he departed? I don't know. He knows. Three, this kind of case, departure from the statutory minimum. Now, since we're never going to know, really, and all we have to do, if you read it broadly based upon, is send it back so that judge himself or herself can resentence. And by the way, judge, when you resentence, if the guidelines had nothing to do with this, don't change the sentence. Now, that seems to be practical, prevents every case from trying to psychoanalyze the judge, prevents us from hearing appeal after appeal like the appellate courts would certainly have to. And anyway, this is, you know, common sense as to how they're supposed to work. Do the statute permit it? Yes. Because the statute says judge in the departures, you start with the guideline. Because the statute says here, judge, in the language he read, you start with the guideline. Now, maybe some won't. Maybe some will never use it. Maybe somebody will say 60 months, no matter what. Good. You, judge, want to do that, do it on remand. Do it when you reconsider, if it's legal. Now, that's a very simple you see, it's a little complicated to say, but you see what I'm doing? Three points, Justice Breyer. First, there's no need to psychoanalyze the judge if the result of the psychoanalysis would be that the judge implemented the law incorrectly. You don't get relief for that. So in order to have the Court make the same mistake twice. The second thing I'd say is it is a very strange scheme in which the commission's judgment that the drug sentences are too high is implemented only in the cases of cooperators. If you think of two defendants, each subject to the statutory minimum. Breyer, I sometimes speak more broadly than I should. I don't mean really carry in a psychoanalyst. What I really mean is you look at all these things he wrote and different things and try and put it together. Nor do I mean in every case they wanted to lower it. They wanted to lower it in these cases. That's that's you're right about that. Your Honor, and my basic point is if the judge considered something the judge should not have considered, that is not a reason, and it particularly where it benefited the defendant, that's not a reason for a 3582 C2 reduction. The second thing is just to your instinct that these defendants should get their sentence reduced if you consider other defendants. Breyer, I'm not saying that. I'm saying send it back to the judge because he or she is the one who knows whether this was really significantly influenced by the guidelines or not, and therefore the judge can impose the sentence he really wants to impose. Your Honor, even under that approach, the only ones you're going to be able to send back are the cases in which there was a statutory minimum and there was a 3553 motion. So you're going to wind up with a very strange scheme where the commission's judgment that the drug sentences are too high, and I think the district court judge who is no friend to statutory minimums made this point, said that it's a very strange scheme where the commission's judgment that the drug sentences are too high is implemented only in the case of cooperators. Amendment 782 says nothing about cooperation or differentiating between two defendants subject to statutory minimums because one cooperated and one didn't. But let me get back to 3553e and why it doesn't instruct a court, and I think it couldn't instruct a court, to start with the below minimum guideline range as the starting point for the departure, to reward a cooperator twice, once by treating him like he didn't commit a different crime, and the second time by giving him a substantial assistance departure, and I guess a third time, on Petitioner's view, by giving him a sentence reduction that has nothing to do with his cooperation. The reason it couldn't work that way is, although the guidelines are not mandatory now, and we understand that as a constitutional ruling, Congress implemented this against the backdrop of guidelines it believed were mandatory. Now, imagine a case in which a defendant is subject to a 60-month statutory minimum, and the judge thinks, you know, this defendant did provide substantial assistance, not a great deal, I'd probably give him a year off, I'd give him a 48-month sentence, but we're up to me. Now imagine his guidelines range calculation, if the statutory minimum did not exist, were 24 to 30 months. Under their scheme, you'd start with the judge would then be faced with a dilemma. If he decides he's going to grant the substantial assistance motion, he has a range where not only the – where he's actually stuck pretty much with that range. I don't think you could have done an upward departure under the mandatory guidelines system because he didn't provide that much substantial assistance. So the judge either has to give a sentence of 30 months that he thinks is 18 months too low, or he can deny the substantial assistance motion altogether and impose a sentence that he thinks is 12 months too high. I don't think there's any reason to think that Congress was implementing a scheme like that when it enacted Section 3553. Breyer. Breyer. Just if you're right about that, but then the guidelines and policy statements, which is what it says, have all kinds of things in them, including negative things. You shouldn't do this. You can't do that. And my thought is once we go down the road that you're saying, which is examining, as you've done, a sentencing transcript in case after case, that way lies a kind of legal perdition, because did the judge, for example, do the thing or did he think of doing the thing, which the guideline says you shouldn't do? And you see the complexity of second-guessing that seems worse, perhaps, from the point of view of what Congress would have wanted if they thought of it, than giving based upon the guidelines and policy statements a pretty broad meaning. Well, Your Honor, I don't think I'm pointing the Court down the road to perdition here. We have a very clear view of how substantial system sentencing should work, which again is the view of the 11 courts of appeals that have squarely addressed it. And under that view, we think it doesn't matter what the judge may have had in his mind. You can't, as we've acknowledged when this was up for debate before the Sentencing Commission, you know, judges may have a lot of things in their minds, and some of them are permissible considerations and some of them are not. And I think we trust that district judges, at the end of the day, should have complied with the law. We presume they did comply with the law. And if, even if it's apparent that they made a mistake and that the mistake benefited the defendant, we don't go back and give the defendant even further relief on the basis of that mistake. And that is – and here there was no mistake at all. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And as to giving defendants some further benefit, I mean, you had an opportunity to appeal, and one might say that by thinking about what should have happened, what you are doing is seeking a form of collateral review that you are not entitled to at this point. So, Your Honor, first of all, I know you understand this, but we are now talking about a case that is not like this case. In this case, they have no argument, and they haven't really made one, that their sentences were based on the guidelines as a matter of historical fact. Kagan. Kagan. Kagan.     Kagan.      Kagan.     Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Why should it be true, given, you know, sort of like a second shot at an appeal? So there are a couple of reasons, Your Honor. I just want to be clear that we are talking about a case that's not this one. There are a couple of reasons. One is just, just as a practical matter, you would be requiring the government to appeal even sentences it thought it was substantially fine with and could live with just to preserve down the road some procedural objection to 3582 C2 relief. And I don't think that's a great use of the courts of appeals time or frankly, the government's own resources. But there are two statutory reasons why I don't think that that approach is the right one. One is the one I was discussing with Justice Sotomayor earlier, which is that I don't think a sentence can be said to be based on, that is, the legal foundation of, the guidelines aren't the legal foundation of the sentence if they're not even the guidelines that the court was required to apply. So, again, 3582 C2. And I don't quite understand that just as a matter of language, something can be based on a legal error. Well, Your Honor, here, I think based on a sentencing range actually has a very specific meaning. As we point out in the first section of our brief, and as Petitioners never really respond to in their reply brief, sentencing range is a term that's only used in three different places in the statute. And the, I think the relevant places here are, one, we see it in 3582 C2. We also see it in section 3553 A4 as the thing that the number that the guidelines give back to you, or the range of numbers in most cases that the guidelines give back to you under 3553 A4. And I think based on the sentencing range means that the number that 3553 A4 gave back to the district judge when he computed the guidelines was actually the number it should actually be that number. And where there was an error there, I don't think 3582 C2 should be applied to give the defendant further relief. And the reason for that is the guidelines, the third place sentencing range is used, are required to return a sentencing range to the district judge that complies with all statutory law. And when the commission changes a guidelines range, it only has permission to do so outside the context of statutory minimums. And so the whole function of 3582 C2 is to give defendants the benefit of judgments that the commission has made that would change their sentences if they were sentenced properly for the first time today, and that puts them on par with defendants who are getting sentenced properly for the first time today. It doesn't really make sense to give them relief where the commission's changed a judgment that shouldn't have had any effect on their sentences to begin with. The second legal operative rule I would suggest here, and this is specific to the context of statutory minimums, is that nothing in section 3582 C2 itself or any related statute allows the commission to grant retroactive sentencing relief that would allow a defendant to receive a sentence that is below a statutory minimum. They don't claim that the commission could write a rule that says everyone who is sentenced to a 20-year statutory minimum under 21 U.S.C. 841 now gets a 10-year sentence. Instead, to the extent they are relying on the ability of the commission or the judge to recommend or impose a sentence that is below the statutory minimum, they are relying on section 3553 E. And for the reasons I have given, and I'm happy to get back to and perhaps add a few more, section 3553 E does not remove the mandatory minimum for all purposes. What it allows is a sentence that reflects or takes account of substantial assistance, and the entire delta between the statutory minimum and the sentence the defendant actually receives has to be based on substantial assistance factors. Neither the guidelines, I think, nor, dare I say, common sense, suggest that one of those factors should be the sentence that a non-cooperating defendant would have received had he been convicted of a crime that Congress did not deem serious enough to warrant a statutory minimum. We can disagree, we don't, but one could disagree, as the district judge did, with the policy wisdom of some of these statutory minimum sentences. But the fact remains that in the eyes of Congress, a defendant who has committed an offense like these Petitioners did, with the criminal history that these Petitioners have, has committed an offense that warrants a particular statutory minimum. Kennedy, there's one small point I didn't quite understand. In the course of your answer to Justice Kagan, you indicated that if this had to go back to the district judge, per Justice Breyer's common sense approach, that that would mean that the government, at the first sentencing hearing, would have to make all of its arguments or waive them. I thought it was just a new sentencing procedure. You could say, well, Your Honor, the first time you had this sentence, we thought that we made our case and we did, but there are many other things to consider. You could say that in the second hearing, couldn't you? I'm not sure that we could, Your Honor, because the Court made clear in Dillon it's not a complete resentencing. You essentially do everything the same way you did at the first sentencing and just so that you didn't have to. Is there any authority I could look to to see if there's this waiver? To a waiver of the law. Kennedy, you said you have to preserve all these points or you can't do them on round 2, that you're barred on round 2. So Dillon addresses the fact that this isn't a full resentencing proceeding. And I was responding to Justice Kagan's suggestion that the government had effectively acquiesced to section 3582C2 relief when it – in a case, again, not this case, where substantial assistance sentencing was done improperly and the government hadn't appealed. I'd also like to quickly address opposing counsel's suggestion that we're creating sentencing disparities. I think they're creating sentencing disparities in three different ways. The first is a timing disparity. Again, under our view of how substantial assistance works, which is the law of all the circuits that have addressed it, and I think the only fair reading of the statutes, they would have a very strange timing disparity where they're entitled to section 3582C2 relief simply because they were sentenced before Amendment 782, whereas an identically situated defendant sentenced today wouldn't get relief. I think Justice Ginsburg pointed this out earlier. The second disparity that I think exists here is the one I was pointing out to Justice Breyer, which is that you have Amendment 782, which has nothing to do with cooperators and only has to do with the appropriate sentences for defendants convicted of drug crimes, and yet the – as to two different defendants, both of whom Congress believed committed the same crime and deserve the same statutory minimum, only the benefit of the commission's judgment on a matter that the commission's judgment isn't controlling because we know what Congress specifically thought because there's a statutory minimum. And the third disparity is one I've mentioned a few times here today, which is that, again, I think there would be an anomaly in their view of how substantial assistance sentencing works, even if we get rid of that very odd situation that I think would come up quite a bit when the guidelines were mandatory and shows Congress couldn't have intended it to work the way they're suggesting. I still think it is very odd for Congress to have enacted a statute that would allow a defendant who is sentenced to a statutory minimum and then cooperates to presumptively receive a sentence – the same sentence if he had – that he would have gotten if he hadn't cooperated, if he'd committed a different crime. Section 3553F illustrates that Congress knew exactly how to write language of the sort that Petitioners want to read into 3553E. Although 3553F was enacted later, they're not unrelated provisions. They're the only two provisions of section 3553E that allow sentencing below a minimum – that allow sentencing below a minimum under any circumstances, and Congress naturally would have viewed them as related. Thank you. Roberts. Roberts. Thank you, counsel. Thirteen minutes, Mr. Fisher. Sotomayor. Mr. Fisher, make the following assumptions. Rejecting your argument that the substantial assistance has to start from the amended guideline down. Let's assume we accept the government and the Eleventh Circuit's who have ruled this way, that it has to start from the statutory minimum. But assume further that some of those circuits have said that the Court can't even consider the guideline range in determining how much of a discount to give. And that was wrong, that, as with all factors, a district court can consider what it wants in determining, for all the reasons I said earlier, how much of a discount to give can be informed by the guideline range in some way. Where would that put your clients? Because it's – I'm not clear that – and to be frank with you, it wasn't something I was paying attention to when I read the sentencing transcripts. A, I'm not clear that the defense attorneys in these cases below actually argued anything different than you did today, which would be rejected. That didn't raise an argument that the – that they properly raised an argument that the guidelines should inform the departure from the maximum. So the answer to your question where that would put my clients, Justice Sotomayor, would be that this Court should vacate the judgment and remand, as Justice Breyer suggested, for the district court to answer the question whether the guidelines had some magnetic pull or influence on the ultimate sentence granted. And remember, for three of them, they actually ended in the – Ginsburg. Why can't you tell that from reading the transcript? Well, Justice Ginsburg, I think that the transcript, if anything, suggests that it did, because three of the defendants, three of the five defendants here, actually ended up with within-guideline-range sentences. And for the only – and for one of them, the judge deviated from that, Mr. Gutierrez. The judge actually said partly because he didn't think the guidelines properly measured the offense. So if anything, we would win, but I think out of an abundance of caution and the way Section 3582 applies, you might just send it back to the district judge. Sotomayor, I'm sorry. All of them basically were the first type of judge I mentioned earlier. I thought virtually all of them except that one. The judge said, I give a percentage. Right. Right. So I think then you have the question that the government itself raised when this was in front of the Sentencing Commission, which is that even if the judge characterizes the departure in terms of a percentage, the judge may have in the back of her mind where that percentage leads in terms of the guideline range. And I think it's not a coincidence that three of the five sentences here ended up in the guideline range. And I think, Justice Sotomayor, just to reinforce the question that you asked, I think it would be a highly undesirable and just improper rule to say that the only two things that can go into sentencing in a case like this are the mandatory minimum and the 5k substantial assistance factors, because there the judge would be required to give the maximum downward departure in every single case based on those 5k factors, regardless of how serious the crime was. It would be very odd. Sotomayor, that's what I said earlier, which there has to be a little bit more. The question is, what are you comparing against and what are the factors you're weighing? Right. So I think if we get the government, all of its legal arguments, even there, as the Third Circuit said in Weinberger, the guideline has some effect on the ultimate sentence, at least to the degree, as Justice Breyer was pointing out, the district judge should have another look. But if I could return to the main argument I made here, because I think I understand the Court may be a little bit perplexed at what it has in front of us. The Court granted a case dealing with section 3582, but what really happens in this case is everything turns, at least setting aside what we just discussed, but everything in the first instance turns on section 3553e. And so it all comes down to how section 3553e works. Now, the government keeps saying 11 circuits, 11 circuits. If you look at those opinions, you'll find that only a few of them have any reasoning in terms of section 3553e, and I think it is quite clear the D.C. Circuit has disagreed. So you have a circuit split you need to resolve about section 3553e. And if I could just read you one more time, I think the language, which Congress could hardly speak more clearly at page 3A when it says, ''Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Commission pursuant to section 994.'' So the current so the so Mr. Fagan made a few responses, and I want to go through them one by one to that statutory language. First, he said, well, I overlooked the first sentence, which contains a phrase saying that the sentence shall reflect the defendant's substantial assistance. Well, two points about that. First of all, as we pointed out in our brief, the word ''reflect'' simply as a textual matter can mean just to make apparent. And the fact the sentence is lower than the mandatory minimum is what makes apparent the fact that the defendant granted substantial assistance. And even if you thought the word ''reflect'' was ambiguous, I would just return you again to the second sentence, which is a directive straight to the district court telling the district court how to impose the sentence. The next argument Mr. Fagan made was that, well, Melendez forecloses the reading that I've just given you. And that's just not the case. That wasn't the issue in front of Melendez. And indeed, it wasn't even what the government argued in Melendez. We cite in our reply brief a few times that the government argued that the second sentence of section 3553e just requires the judge to give a sentence according to the guidelines, as opposed to the pre-guideline system of having free rein to issue any sentence the judge wants. So again, what the government argued in Melendez and what footnote 9 and other places in the opinion, to the extent the Court spoke to it all, I think the better reading of Melendez is. Sotomayor, go to F, because that's the strongest argument in my mind that the government has. And I know you counter by saying it's a later provision to this one, but it's a later provision in light of the circuit holding that's close to unanimous, not quite, that E starts from the statutory minimum. And if Congress knew enough to change F to exclude statutory minimum, it could have at the very same time done it to E if it disagreed with the majority of circuits. Fisherman, So three responses, Justice Sotomayor. First of all, section F was enacted in 1994, and I think there were very few circuits that had spoken to the E issue at that point. Almost all of the authority the government cites comes later. And indeed, what you find in those cases are courts comparing E and F and thinking that E's mean something different than F, and so that's what's driven them off the Our position, to start with, as a statutory matter is, E has to mean what it meant for the first eight years before F was ever enacted. F can't have changed what E means. But if you do want to compare them, so we think you shouldn't compare them, but if you do want to compare them, the operative language in F is almost identical to the operative language in E. It says that the court shall impose a sentence pursuant to the guidelines promulgated under the Sentencing Commission under section 994. It's almost precisely the same language that is in the second sentence of subsection E. And so then all the government is left with is, well, language before that in F talks about without regard to the mandatory minimum, whereas what we have in subsection E is language that says the court has the authority to sentence below the mandatory minimum. And the question I think that you would be asking is, do those two things mean anything different? And we think the answer is no, because, and this goes to even more to what Mr. Fagan was saying, the whole point of a mandatory minimum is to set a floor. And so either you have a floor or you don't. And once Congress tells you you don't have a floor anymore, there's no work left for a mandatory minimum to do. So saying that a court has the authority to sentence below a mandatory minimum is the functional equivalent of saying sentence without regard to the mandatory minimum, because that's the only thing a mandatory minimum can do is set a floor. So once it's gone, it's simply gone. It doesn't come back to life. And it doesn't hang around like a zombie who's been killed and somehow still has some pull on the sentencing, on sentencing judge's discretion. And I think that all of what I'm saying is reinforced, as the Chief Justice pointed earlier to the, and I pointed earlier to the points in the Section 3553E provisions where Congress points directly to subsets of 994. It doesn't point directly to Section 994N, which would support the regime Mr. Fagan is describing. It says 994 as a whole. And again, Justice Sotomayor, what does subsection F do? It's the only other section that directs the Court holistically to section 994. So we think Congress was doing the same thing. And that's what the Court itself said in Dorsey. In Dorsey, the Court said there are two ways for a judge and a defendant to escape a mandatory minimum. One is sub E, the other is sub F. And the Court treated them as equivalent. So I want to make two final points. The last point, aside from all these legal points that Mr. Fagan made and the government makes, was a policy argument, that it would be a double benefit of sorts for cooperators to have their sentences pegged under E to a guideline, and then perhaps departed down from that. We just disagree with that premise. Remember, it's not a the benefit of cooperation is to be treated just like anybody else. It's not a double benefit. It's just a benefit. It's just telling the Court, look, if you have a cooperator, take away the mandatory minimum and sentence him just as you would sentence anybody else. Now, the judge would have discretion to give that defendant a within guideline range, or the judge would have discretion if there were exceptional cooperation to go below the guideline range. But that's in the Court's discretion, and Congress has just given the Court the ordinary discretion that somebody else would have. Another way to think about what E does is it says we want all cooperators treated the same. Regardless of whether the cooperator is subject to a mandatory minimum or not, we want to lift the mandatory minimum for those who are, and just have them sentenced according to the guidelines. So cooperators are very important to the justice system. The government relies on them heavily. And so when a defendant makes the very difficult choice to cooperate, we want that defendant treated just like anybody else. And one last thing on the policy is that he said, well, our result running this section through section 3582 would be to give only cooperators the benefit of the sentencing commission's drug guideline reduction. That's just factually inaccurate. For all defendants who are subject to a mandatory minimum, but whose guideline range were above the mandatory minimum, they, too, get the benefit of section of amendment 782, regardless of whether they cooperated. And I think the government admitted that in its brief, so that's just a small inaccuracy I wanted to correct. And the one last point I wanted to make was to go back to Justice Kagan, your question about based upon being a question of historical fact. And this seems to be one point where I think we in the government are in a sense agreeing, which is we think that that's one way to read the text, but it's not the better way to read the text. And the better way to read the text is to ask what the law required in that situation for the reasons I've said and for some of the reasons Mr. Fagan have said. But if you're unpersuaded by that, I want to reiterate what we say in our opening brief and then say again at page 15 and 16 of our reply brief, which is if you want to do this as a historical question, exactly what the judge did, warts and all, we win. And the reason why is because the judge adjusted the guideline sentences in our cases according to subsection 5G1.1, and the commission, as part of its amendments to 782 and the policy statements accompanying it, said when you calculate an amendment and amended guideline range, you do not include section 5G1.1 as part of that calculation. So we have explained to the Court, and I don't think it's rebuttable, that even if you take the mistake the judge made in the first instance as a historical fact that the Court has to deal with, they still have lower guideline ranges under section 3582. And that's all that's required for eligibility. And so for all the reasons that several justices of the Court have said, whether you, no matter what you do, I think the safest way to resolve these cases, this narrow band of cases you're dealing with here with co-operators whose guideline ranges were below the mandatory minimum, is to send them back to the district judge and allow the judge to exercise the informed expertise that the Congress imagined and that section 3582 in particular envisions to decide whether these defendants should get a new sentence or not, and how much that new sentence should be reduced. If there are no further questions, I'll submit the case. Roberts. Thank you, counsel. The case is submitted.